UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICARDO DIAZ,<br><br>      **Plaintiff,**<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>      **Defendant.** | No. 15 C 11386<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ricardo Diaz ("Plaintiff" or "Mr. Diaz") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"),[1] denying Plaintiff's applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings, including entry of final judgment. (Dkt. 7).

The parties cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkts. 8, 15). For the reasons stated below, Plaintiff's motion for summary judgment is GRANTED and the Commissioner's is DENIED. The decision

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the Commissioner is REVERSED, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

I.  BACKGROUND

Mr. Diaz applied for supplemental security income and disability insurance benefits when he was 30 years old. (R. at 198). Mr. Diaz previously worked as a construction worker and telemarketer. (*Id.* at 224). In 2007, Mr. Diaz was admitted to the emergency room and his evaluation noted delusions, paranoid ideation, psychosis and schizoaffective. (*Id.* at 310–11). Mr. Diaz was subsequently treated by Marlene Casiano, M.D., Thor Agustsson, D.O., and Shyamsunder Chakilum, M.D. (*see* R. at 353, 329, 404),[2] and diagnosed with bipolar and schizoaffective disorder. (*id.* at 348, 316).

Bipolar disorder "causes extreme mood swings that include emotional highs (mania or hypomania) and lows (depression)." Mayo Clinic: Bipolar Disorder.[3] Schizoaffective disorder is "a disorder in which a mood episode and the active-phase symptoms of Schizophrenia occur together and were preceded or are followed by at least 2 weeks of delusions or hallucinations without prominent mood symptoms." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 298 (4th ed. 2010). Schizoaffective disorder features "an uninterrupted period of illness during which, at some time, there is Major Depressive, Manic or

---

[2] Dr. Casiano treated Mr. Diaz from April 27, 2010 to August 22, 2012. (R. at 348). Dr. Agustsson treated Mr. Diaz from October 10, 2012 to January 23, 2013 (*id.* at 330), and Dr. Chakilum from October 12, 2012 to July 2014. (*id.* at 397, 444) Drs. Agustsson and Chakilum were both doctors in Linden Oaks Medical Group. (*See id.* at 329, 396).
[3] Online at http://www.mayoclinic.org/diseases-conditions/bipolar-disorder/basics/definition/con-20027544, last visited January 27, 2017.

2

Mixed Episode concurrent with symptoms that meet Criterion A for Schizophrenia." *Id*. at 319. "Substantial occupational and social dysfunction are common." *Id*. at 321.

## II. PROCEDURAL HISTORY

On January 17, 2013, Mr. Diaz protectively filed an application for supplemental security income and disability insurance benefits, claiming a disability onset date of August 15, 2010. (R. at 11, 196–207). On October 17, 2014, the ALJ issued a written decision denying Plaintiff's application for benefits based on a finding that he was not disabled under the Social Security Act. (*Id*. at 11–22). The opinion followed the five-step sequential evaluation process required by the Social Security Regulations. 20 CFR § 404.1520. The ALJ initially noted that Mr. Diaz met the insured status requirements of the Social Security Act through December 31, 2014. (R. at 13). At step one, the ALJ found that Mr. Diaz had not engaged in substantial gainful activity since the alleged onset date of August 15, 2010. (*Id*.) At step two, the ALJ found that Mr. Diaz had the severe impairments of schizophrenia and bipolar disorder. (*Id*.) At step three, the ALJ found that Mr. Diaz did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (*Id*. at 14).

Before step four, the ALJ found that Mr. Diaz:

has the residual functional capacity to perform a full range of work at all exertional levels but with non-exertional limitations as follows. He retains the ability to perform simple, routine, and repetitive tasks consistent with unskilled work in a static environment with few

changes. He is able to have appropriate interactions with supervisors, co-workers, and the public. He is able to make simple work-related decisions.

(R. at 15). Based on this residual functional capacity ("RFC"), the ALJ determined at step four that Mr. Diaz was unable to perform any past relevant work of construction worker and telemarketer. (*Id.* at 20). At step five, however, the ALJ found that Mr. Diaz could perform other work existing in the national economy including machine feeder, janitor, packager, and fastener. (*Id.* at 21). Based on this determination, the ALJ concluded that Mr. Diaz was not disabled under the Social Security Act. (*Id.*) The Social Security Appeals Council subsequently denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (*Id.* at 1–4). Plaintiff now seeks review in this Court pursuant to 42 U.S.C. § 405(g).

### III. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Counsel denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). The district court reviews the decision of the ALJ, limiting its review to a determination of whether the ALJ's findings of fact are supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). In addition, the ALJ must explain her analysis of the evidence "with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*,

425 F.3d 345, 351 (7th Cir. 2005). When the ALJ recommends a denial of benefits, the ALJ "must first build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations and citation omitted). This means that the ALJ "must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Id*. A Commissioner decision that lacks evidentiary support or adequate discussion of the issues will be remanded. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## IV. DISCUSSION

Plaintiff objects to the ALJ's decision on two grounds: (1) the ALJ did not properly analyze the treating psychiatrists' opinions and (2) the ALJ's credibility determination was flawed. The Court agrees that the ALJ erred in her analysis of both the treating doctors' opinions and Mr. Diaz's credibility.

### A. The ALJ's treatment of the doctors' opinions is not supported by substantial evidence.

Plaintiff challenges the ALJ's treatment of the opinions of Drs. Agustsson and Chakilum. (Dkt. 8 at 7–10). The ALJ gave "little weight" and "very little weight" to these treating psychiatrists' opinions, respectively, but gave the psychological consultants opinions "significant weight." (R. at 18–19).

5

The ALJ must evaluate each medical opinion in the record. 20 CFR § 404.1527(c).[4] The opinion of a claimant's treating physician is entitled to controlling weight if it is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 CFR § 404.1527(c)(2). The treating physician is familiar with the claimant's condition and progression of his impairments and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Id*. A physician who has personally examined the claimant typically is given more credence than one who has only reviewed claimant's medical file. 20 CFR § 404.1527(c)(1). An ALJ must provide "good reasons" for the weight she gives to each treating source opinion. 20 CFR § 404.1527(c)(2); *Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009). If a treating physician opinion is not afforded controlling weight, the ALJ must determine what weight to give it in accordance with several factors and must provide "sound explanation" of this determination. 20 CFR § 404.1527(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The factors include the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; explanations for the opinions; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. 20 CFR § 404.1527(c)(2); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

---

[4] A medical opinion is defined as: "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, physical and mental restrictions, and residual functional capacity…Omitted from this definition are opinions about a claimant's ability to work, a question the regulation reserves for the Commissioner." *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (internal quotations and citations omitted).

The ALJ is not bound by the findings of a state agency consulting physician, but when considering those findings, the ALJ must apply the relevant factors in 20 CFR § 404.1527(a)-(d), such as the consultant's medical specialty and expertise in the Social Security rules, the supporting evidence in the case record, supporting explanations provided, and any other factors relevant to weighing the opinions. Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the consulting physician opinions. 20 CFR § 404.1527(e)(2).

### i. Dr. Chakilum

The ALJ did not adequately explain why Dr. Chakilum's opinions were given "very little weight." On June 14, 2013, Dr. Chakilum completed a "Mental Impairment Questionnaire (RFC & Listing)" documenting Mr. Diaz's chronic schizoaffective disorder, assessing a GAF score of 41 to 50,[5] limited or modest response to treatment, and symptoms including obsessions or compulsions, mood disturbance, hostility and irritability, lack of reality orientation, and distraction by delusions and hallucinations. (R. at 397–99). Dr. Chakilum stated that Mr. Diaz required constant supervision to prevent harm to himself or others. (*Id.* at 399). He opined that Mr. Diaz is markedly limited in a number of areas including the ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, perform activities within a schedule, and work in coordination with or proximity to others without being unduly distracted by

---

[5] A Global Assessment of Functioning (GAF) scale of 41–50 indicates "serious symptoms…or any serious impairment in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2010). The 5th Edition of the DSM abandoned reliance on GAF scores. *See Meuser v. Colvin*, 838 F.3d 905, 908 n.1 (7th Cir. 2016).

7

them. (*Id.* at 398–99). On January 7, 2014, Dr. Chakilum opined that Mr. Diaz has "concentration issues, thought disorder" which would make him unable to sustain any job and was "potentially harmful in work environment, due to his paranoia, and delusional thoughts." (*Id.* at 418).

The ALJ concluded, however, that the "overall record including the objective medical record indicating improvement with treatment and the claimant's reported activities fail to support the extreme limitations opined [by Dr. Chakilum]." (R. at 14). The ALJ reasoned that Dr. Chakilum's opinions were "inconsistent with the medical records" because the treatment record showed "improvement" in Mr. Diaz's mental condition; the opinions were on "issues reserved to the Commissioner that are again at odds with the claimant's treatment records and reported activities"; and Dr. Chakilum "failed to provide a function-by-function analysis in support of his extreme assessment." (R. at 18–19).

First, the Social Security regulations do not require a function-by-function analysis. *See Virden v. Colvin*, No. 14-cv-1219, 2015 U.S. Dist. LEXIS 126316, at *26 (C.D. Ill. Sep. 21, 2015) ("[G]overning regulations do not require a treating physician to submit a function-by-function assessment of a patient as part of his opinion, and dismissing a treating physician's opinion for that reason is inappropriate.") (collecting cases); *see also Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (an ALJ need not articulate a function-by-function analysis).

Second, the ALJ substituted her own judgment for the opinions of Mr. Diaz's treating physicians to conclude that the treatment record showed "improvement"

8

and that Mr. Diaz "has been essentially stable with medications." It is well-settled that treating physicians are in the best position to interpret their own clinical findings. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") (citation omitted).

To support her conclusion that Mr. Diaz had improved, the ALJ cited Mr. Diaz's statement to Dr. Casiano on October 10, 2011 that he was feeling "not [] as overwhelmed with things" and to Drs. Agustsson and Chakilum in December 2012 and March 2013 that he was feeling "stable." (R. at 16, 18). But other treatment notes showed Mr. Diaz as being "unable to function due to the stress intolerance" and having "psychotic symptoms, especially if he dwells on it" and "constant thoughts of the worst kind, hurting people." (*Id.* at 433, 416, 441). Fluctuations in Mr. Diaz's symptoms and self-reports are unsurprising given nature of his condition. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("[T]he ALJ's analysis reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated.") (internal citations omitted); *see also Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) (treating doctor's note that claimant felt "fine" at one appointment "does not weaken the rest of [claimant's] testimony about disabling pain"). As the Seventh Circuit has stressed, "'cherrypicking' is especially problematic where mental illness is at issue,

for a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (internal citations and quotations omitted). Indeed, Mr. Diaz's psychiatrists expressly noted his lack of insight into his own illness and belief that "nothing is wrong with him." (*Id*. at 320, 322, 397). At the hearing, Mr. Diaz stated that he did not believe he had schizophrenia. (*Id*. at 44). He thought he had "Tourette's." (*Id*.) Thus the ALJ erred in pointing to a handful of Mr. Diaz's subjective statements to his psychiatrists to undermine the treating psychiatrists' opinions.

Also problematic is the ALJ's reliance on one treatment note by Dr. Casiano noting that Mr. Diaz was responding well to medications. (*Id*. at 18). The ALJ did not explain why this one October 2011 note should override Dr. Casiano's other statements about Mr. Diaz's symptoms and restrictions, or the more recent treatment notes and opinions of Drs. Chakilum and Agustsson about Mr. Diaz's condition and limited response to treatment.[6] The treatment notes also showed that Mr. Diaz's doctors adjusted his medications on a number of occasions, as recently as July 2014. (*See* R. at 342, 353, 363, 405–07, 444–45).

The ALJ also relied on three "stable" mental status examinations (MSE) on November 26, 2013, March 10, 2014, and July 16, 2014 to show Mr. Diaz's improvement. (R. at 17, 433–34, 442, 444–45). The ALJ acknowledged the May 28,

---

[6] For example, Dr. Casiano adjusted Mr. Diaz's medication after Mr. Diaz experienced weight gain from Zyprexa. *Id*. at 353. In January 2013, Mr. Diaz reported "oculogyric dystonia with increase in Seroquel" (*id*. at 318), though a week later he denied oculogyric symptoms. (*Id*. at 316). In July 2014, Dr. Chakilum changed Mr. Diaz's prescription to Seroquel XR because "he is unable to tolerate the Seroquel, regular." (*Id*. at 444).

10

2013 MSE showing Mr. Diaz's poor attention and concentration (*id.* at 405), and the January 7, 2014 MSE showing he had restricted affect, was hyperactive and unable to do serial 7's, and had a thought process marked by "flight of ideas and obsessional, delusional, intrusive thoughts that people are having sex with each other, all the time." (*id.* at 417.) Nevertheless, the ALJ concluded that because three MSEs around this time were "stable," Mr. Diaz's mental condition had improved. Even if Mr. Diaz's improvement with treatment is supported by the record, it would not be conclusive of Mr. Diaz's ability to work. The Seventh Circuit in *Scott*, 647 F.3d at 739-40, cautioned that although claimant with bipolar disorder improved with treatment, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce…The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."

Third, the ALJ was correct in stating that opinions about Plaintiff's ability to work are reserved for the Commissioner. *See Loveless*, 810 F.3d at 507. But the ALJ did not specify which opinions were reserved for the Commissioner or distinguish Dr. Chakilum's medical opinions from opinions about Mr. Diaz's ability to work. Dr. Chakilum's opinions also should not be disregarded because he was responding to a questionnaire solicited by the Agency. (R. at 18, 397–99); *See Jelinek*, 662 F.3d at 811 (doctor's questionnaire responses addressing claimant's symptoms and RFC was "highly relevant" to ALJ's analysis).

Fourth, the ALJ erred in relying on Mr. Diaz's "reported activities" and "fairly active schedule," which included playing basketball and making meals (R.

18), to discount Dr. Chakilum's opinions. The Seventh Circuit has stressed that there are "critical differences" between activities of daily living and activities in a full-time job. *See Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016). Importantly, Mr. Diaz's claim is about his mental, not physical, limitations. *See Meuser*, 838 F.3d at 913 ("Meuser, after all, is not claiming that he is disabled by *physical* limitations, so the proper focus—ignored by the ALJ—is the effect of Meuser's schizophrenia on his mental functioning") (emphasis in original).

Finally, the ALJ stated that Dr. Chakilum's opinions were "extreme" and not consistent with the medical records. On the other hand, the ALJ acknowledged the GAF assessments of both Drs. Agustsson and Chakilum as "consistent with the abnormal mental symptoms the claimant displayed" at his examinations with each doctor, and acknowledged that a GAF score of 41-50 indicated "serious symptoms in the DSM-V." (R. at 19).[7] All three psychiatrists noted that Mr. Diaz at times

---

[7] The Commissioner argues that Mr. Diaz's psychosis was "in remission" and "not a current condition." (Dkt. 16 at 9). The Commissioner is not entitled to raise a reason to support the ALJ's decision that the ALJ did not raise. *Meuser*, 838 F.3d at 911; *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, 63 S. Ct. 454 (1943). If the ALJ relied on Dr. Chakilum's treatment notes referencing "remission" (without expressly stating so), she did not explain the logical bridge to her conclusion that Mr. Diaz improved. The Court notes that "remission" can have more than one meaning in the context of mental illness. APA, *Diagnostic and Statistical Manual of Mental Disorders* 303 (referring to "partial" and "full" remission). Additionally, for a person with schizoaffective disorder, "[a] period of illness is considered to have ended when the individual has completely recovered for a significant interval of time and no longer demonstrates any significant symptoms of the disorder." *Id*. at 319. The doctors' opinions and notes do not reflect that Mr. Diaz's illness had "ended." Also, Dr. Chakilum's "remission" notes fall under the History of Present Illness ("HPI") section which reflects not an "objective assessment or opinion" but "the patient's subjective statements about the problem for which she is seeking care and a history of that problem, if any." *Snedden v. Colvin*, No. 14 C 9038, 2016 U.S. Dist. LEXIS 25287, at *31 (N.D. Ill. Feb. 29, 2016) (citations omitted). The treatment notes did not specify what type of remission Mr. Diaz was experiencing or when, or the implications of remission, and the ALJ did not seek to develop the record on this issue.

experienced paranoia, difficulty with focus and concentration, disorganized thought process, and hallucinations or delusions. (*See* R. at 331-32, 348, 359, 417). Dr. Casiano wrote three letters describing Mr. Diaz's symptoms and restrictions, including Mr. Diaz's "depressed mood, paranoid ideation, difficulty with focus, concentration, and visual hallucinations." (R. at 353, 359, 362.) The ALJ did not discuss these letters or indicate what weight to give Dr. Casiano's opinions. On remand, the ALJ should address what weight Dr. Casiano's medical opinions should be given.[8]

Thus it appears that the ALJ engaged in cherry-picking rather than a comprehensive consideration of all of the medical evidence. The Court cannot conclude that the ALJ's conclusions about Dr. Chakilum's opinions would be the same if the ALJ had correctly applied the law to the facts of this case. And "even assuming that there had been a reason to deny controlling weight to [the treating psychiatrist's] opinion, the ALJ was not permitted simply to discard it. Rather, the ALJ was required to explicitly consider the details of the treatment relationship and explain the weight he was giving the opinion." *Meuser*, 838 F.3d at 912 (internal citations and quotations omitted). The ALJ did not consider many of the factors in 20 CFR § 404.1527(c), such as Dr. Chakilum's specialty or the nature and length of the treatment relationship.

---

[8] Dr. Casiano's records also appear to contradict the ALJ's observation that Mr. Diaz had "very minimal treatment visits in 2010 and 2011." (*Id.* at 16). Her records show multiple visits by Mr. Diaz in 2010 and 2011. (*Id.* at 363, 369–81). The ALJ also did not acknowledge that in September 2010, Mr. Diaz was admitted to the emergency room after he threatened harm to family members. (*Id.* at 424).

### ii. Dr. Agustsson

On March 5, 2013, Dr. Agustsson completed a Psychiatric Report provided by Disability Determination Services (DDS). (R. at 330–33). In this report, Dr. Agustsson documented the diagnosis of Mr. Diaz's schizoaffective disorder, GAF score of 41-50, flat mood and affect, paranoid delusions, limited response to treatment, and disorganized thought process. Dr. Agustsson opined that Mr. Diaz has serious limitations with the ability to independently initiate, sustain, or complete tasks; serious limitations with the ability to understand, carry out and remember instructions; serious limitations with the ability to respond appropriately to supervision, coworker and customary work pressures; serious limitations with the ability to perform tasks on an autonomous basis without direct step-by-step supervision and direction; and serious limitations with the ability to perform tasks on a sustained basis without undue interruptions or distractions.

The ALJ did not assess any of factors in 20 CFR § 404.1527(c) in relation to Dr. Agustsson and did not sufficiently explain why his opinion deserved "little weight." Instead, the ALJ stated that Dr. Agustsson did not provide a "function-by-function" analysis. (R. at 19). As discussed, the Social Security regulations do not require this. Like Dr. Chakilum, Dr. Agustsson provided opinions on a form requested by the Agency. Moreover, if the ALJ believed that the opinions of Dr. Agustsson or any of the treating doctors were unclear or incomplete, she should have contacted the doctor to further develop the record. *Virden*, 2015 U.S. Dist.

LEXIS 126316 at *26-27 (citing *Selby v. Barnhart*, 48 F. App'x 576, 581 (7th Cir. 2002)).

The Commissioner argues that Dr. Agustsson's medical records do not support his conclusion and that the ALJ "implicitly recognized" that the treatment relationship with Mr. Diaz was brief. (Dkt. 16 at 6–7). If the ALJ believed that Dr. Agustsson's medical records did not support his opinion, the ALJ failed to "build[] a logical bridge from the medical evidence to its conclusions." *Ghiselli*, 837 F.3d at 779. More importantly, the Commissioner cannot rely on these reasons when the ALJ did not rely on them. *Meuser*, 838 F.3d at 911 (citing *Chenery Corp.*, 318 U.S. at 87-88). Therefore, the ALJ erred in giving Dr. Agustsson's opinion "little weight" solely because no function-by-function analysis was provided.

### iii. State Agency Consulting Psychologists

The ALJ's decision to give "significant weight" to the opinions of state agency psychologists, who reviewed Mr. Diaz's medical file only, is not supported by substantial evidence. Because the ALJ did not give any treating physician opinions controlling weight, the ALJ was required to explain the weight given to the consulting physician opinions in accordance with relevant factors in 20 CFR § 404.1527(e)(2). The ALJ did not do this. The ALJ stated simply that these opinions were "consistent with the severity of the claimant's mental impairment." (R. at 18). Assuming that the ALJ judged the severity of Mr. Diaz's mental impairment based on some or all the factors already discussed, such as Mr. Diaz's reported activities and subjective reports of how he was feeling to his doctors, this was error. In

addition, the consulting psychologist opinions, completed on March 21 and September 5, 2013, did not consider any treatment notes or opinions after September 5, 2013, including Dr. Chakilum's evaluation and opinions on January 7, 2014. (R. at 88, 100, 112, 125). The ALJ should have—but did not—consider the fact that the consulting psychologists did not review the entire case record.

### B. The ALJ on remand should re-evaluate Mr. Diaz's credibility.

Plaintiff argues that the ALJ's credibility finding was flawed. (Dkt. 8 at 10–15).[9] "[A]lthough we defer to an ALJ's credibility finding that is not patently wrong,…an ALJ still must competently explain an adverse-credibility finding with specific reasons supported by the record. An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Engstrand*, 788 F.3d at 660 (internal citations and quotations omitted).

At the hearing, Mr. Diaz testified that he "fight[s] [himself] on a daily basis." (R. at 44). He explained that the "worst things in the world happen in my head, anywhere from hurting people; to offending myself; being worried about what my mind's being read." (*Id.* at 44–46). He testified that he has seen people doing things that they were not actually doing. (*Id.* at 57). He believes he has Tourette's, not schizophrenia. (*Id.* at 44). He helps himself by not telling people about it. (*Id.* at 46). He tries to play basketball daily but does not play "normal basketball." (*Id.* at 48–49). Playing is difficult because he loses focus and has a fear of stepping on lines

---

[9] The Social Security Administration recently eliminated the term "credibility" to emphasize that "subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029.

because he worries he is "disrespecting or ruining something in my brain." (*Id*. at 48–49, 60). Mr. Diaz lives with his parents and brothers. (*Id*. at 37). He can handle his personal care and make simple meals, but his mother usually cooks. (*Id*. at 51). He goes to the grocery store when his parents need something. (*Id*. at 52). Mr. Diaz's son stays with him on the weekends. (*Id*. at 53). His parents help care for his son by making sure his son eats, giving him baths, and caring for him while Mr. Diaz is at the gym. (*Id*. at 58–59). Also, Mr. Diaz's medications make him sleepy and it is difficult for him wake up in the morning, so his parents care for his son in the morning as well. (*Id*. at 58–61).

The ALJ determined that Mr. Diaz was "not totally credible" because the medical records did not support his complaints, his treatment was effective, he engaged in daily activities, and received unemployment benefits in 2012. (R. at 17–18). The ALJ's credibility determination was based on at least some factors that were either improperly analyzed or not supported by substantial evidence, warranting remand on this issue. *See Ghiselli*, 837 F.3d at 778-79.

The ALJ is correct that receipt of unemployment benefits may adversely impact a claimant's credibility, but it is not dispositive. *See Scrogham v. Colvin,* 765 F.3d 685, 699 (7th Cir. 2014) ("attributing a lack of credibility to [applying for or receiving unemployment benefits] is a step that must be taken with significant care and circumspection. All of the surrounding facts must be carefully considered."). The ALJ also found that Mr. Diaz's complaints were not supported by the medical evidence, but the "absence of objective medical corroboration for a complainant's

subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli*, 837 F.3d at 777. As discussed, the ALJ substituted her own judgment for that of Mr. Diaz's psychiatrists to determine that Mr. Diaz was improving due to treatment. Again, even if such improvement was supported by the record, there can be "great distance" between an individual who responds to treatment and one who is able to enter the workforce. *See Scott*, 647 F.3d at 739-40.

The ALJ also relied on Mr. Diaz's reported daily living activities but as discussed, there are important differences between activities of daily living and those of a full-time job. The ALJ described a "fairly active schedule" of playing basketball, video games, driving, making meals, and taking care of his son. (R. at 18). But the ALJ left out Mr. Diaz's testimony that he has difficultly playing basketball, his mother usually cooks for him, and his parents help care for his son.

Mr. Diaz's ability to perform some daily activities did not undermine his credibility. *See Childress v. Colvin*, No. 16-1601, 2017 U.S. App. LEXIS 141, at *9 (7th Cir. Jan. 4, 2017) ("failing to recognize the difference between performing activities of daily living with flexibility (and often with help from family and friends) and performing to the standards required by an employer is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (internal citations and quotations omitted); *see also Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (claimant's ability to care for herself and her grandchildren improper basis for an adverse credibility determination). And as

discussed, the focus should have been on Mr. Diaz's mental functioning, not his physical abilities or limitations.

### C. Summary

In sum, the ALJ's analysis did not provide sufficient explanation and relied at least in part on misstatements of the law. The errors were not harmless because they informed several aspects of the ALJ's decision with respect to Mr. Diaz's RFC and ability to perform certain jobs in the national economy. Because the Court cannot conclude that the ALJ's conclusions would be the same if she had correctly applied the law to the facts, the case should be remanded so that the ALJ can reweigh the opinion evidence and reevaluate Mr. Diaz's credibility. On remand, the ALJ shall consider all of the evidence of record and shall explain the basis of her findings in accordance with applicable regulations and rulings.

## V. CONCLUSION

For the reasons stated above, Plaintiff's request for reversal [8] is **GRANTED**, and Defendant's Motion for Summary Judgment [15] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: February 7, 2017          E N T E R:

*Mary M Rowland*
_____
MARY M. ROWLAND
United States Magistrate Judge